Adams v. Barber.

---

## C. L. ADAMS, Respondent, v. S. J. BARBER, Appellant.

Springfield Court of Appeals, May 8, 1911.  Motion for Rehearing Overruled, July 20, 1911.

1. PLEADING: Fraud and Deceit: Misrepresentations: Scienter. In an action for damages claimed to have been caused by defendant in inducing plaintiff to trade for real estate by misrepresentating the kind and quality of the land, the petition alleged that the defendant fraudulently and intentionally, for the purpose of inducing plaintiff to enter into said contract, made said representations.  *Held*, that this allegation implied that the representations were knowingly made by the defendant in bad faith, with knowledge of their falsity and that the petition·was sufficient as a statement of a cause of action, especially after verdict.

2. ———: ———: ———: ———: In an action for damages for inducing plaintiff to trade for real estate by false representations made by defendant, it is necessary to charge scienter, but no express form of words is required to be used for that purpose, nor is it always necessary that the knowledge of the falsity of the representations be expressly stated in so many words.

3. ———: ———: Damages: Allegation as to Value of Property. In an action for damages alleged to have been caused by the defendant inducing plaintiff to trade for real estate by fraudulently and intentionally misrepresenting the quality of the land, the petition did not state what the value of the real estate would have been if it had been as represented, but plaintiff alleged that he was damaged in the sum equal to the value of the stock of goods which he had traded for the land and the evidence showed that the real estate was actually worthless. *Held*, that the allegations in the petition were sufficiently specific to show the nature of the damages, especially after verdict.

4. **FRAUD AND DECEIT: Remedies.** In cases where the plaintiff had been induced to enter into a contract through the fraud of the defendant, the plaintiff has the choice of remedies: he may maintain an action for damages for deceit, or he may elect to rescind and recover what he has parted with, or he may rescind and still maintain an action for deceit.

5. ———: **Evidence: Acts of Agent.** In an action for damages for alleged false representations by defendant in a real estate deal, it appeared in evidence that the agent of the defendant made arguments and representations to induce the plaintiff not to go to see the land defendant was trading him. Part of this conversation took place while defendant was present; the agent also testified that he and defendant had framed up a deal which defendant had agreed to make with plaintiff. *Held*, that this evidence was competent on the question of the intent of the parties, and whether plaintiff relied upon defendant's representations and as part of the *res gestae*.

6. ———: **Honest Mistake.** In an action for damages for fraudulent representations it is not sufficient to show that defendant made statements which he did not know to be true, and which were in fact false, for if he honestly believes the representations to be true, he is not liable in an action for deceit.

7. ———: **Scienter: Proof as to Knowledge.** In an action for damages for fraudulent representations it is necessary for the plaintiff to allege and prove, first; that the representations were untrue and that the defendant knew them to be false when made, or second; that he made them as of his own knowledge, when in fact he had no knowledge whatever on the subject. Instructions which do not present this question properly to the jury are condemned.

8. **DAMAGES: Fraud and Deceit.** In an action for damages for false representations made in a land deal, the defrauded vendee is entitled to the difference between the value of the property that he received and its value had the representations made been true.

9. **FRAUD AND DECEIT: Caveat Emptor: Relying on Representations.** Where a plaintiff was about to trade for a piece of real estate some distance away, and he had no knowledge or information of his own concerning the quality thereof, and the examination of said land by him would have involved expense and inconvenience, he had a right to trust the representations made by the defendant, as of his own knowledge, concerning the kind, character and situation of the land, and the doctrine of *caveat emptor* does not apply.

10. **APPEAL AND ERROR: Self Invited Error.** Where both parties tried a case on the wrong theory, neither party can complain on account of error thereby committed.

Appeal from Jasper Circuit Court.—*Hon. David E. Blair,* Judge.

REVERSED AND REMANDED.

*B. F. Hackney* and *Thomas & Hackney* for appellant.

(1) In an action of deceit, the plaintiff must allege and prove that the representations were false and that they were known to be false by the defendant at the time they were made, or that the representations were made by defendant as of his own knowledge when in fact he had neither any knowledge on the subject nor any reasonable ground to believe the representations so made to be true. Paretti v. Revenack, 81 Mo. App. 498; Edwards v. Noel, 88 Mo. App. 439; Remmers v. Remmers, 217 Mo. 557. (2) The court erred in giving to the jury at the request of the plaintiff, plaintiff's instructions number one and four. Snyder v. Stemmons, 131 S. W. 724; Koontz v. Kaufman, 31 Mo. App. 415; Dulaney v. Rogers, 64 Mo. 201. (3) Before a purchaser can excuse himself from using ordinary care and prudence to ascertain the truth or falsity of representations made to him, he must show that some deceit or artifice was practiced on him by the opposite party to prevent his investigation for himself. Langdon v. Green, 49 Mo. 363.

*D. B. Jones* and *McReynolds & Halliburton* for respondent.

(1) A petition that charged that the "defendant corruptly and fraudulently with the intent to cheat and defraud plaintiff," is held sufficient allegation to charge fraud in any court. Hoffman v. Gill, 102 Mo. App. 324. (2) Where plaintiff in his petition alleged that the statement made by the defendant was false and that it was fraudulently made, is a sufficient allegation of knowledge. Arthur v. Wheeler & Wilson, 12 Mo. App. 340; Carr v. Spangler, 112 N. Y. S. 593, 138 App. Div.

32; Fenwick v. Bowling, 50 Mo. App. 521; Young v. Vicker, 32 U. C. Q. B. 385. (Canada.) (3) The allegation that the representation was fraudulently or deceitfully made, sufficiently aver *scienter*, as the word "fraudulently" or "deceitfully" excludes the idea of mistake and imports that the representations were made with knowledge of their falsity. 20 Cyc. 100; 8 Ency. Pl. and Pr. 901; Newman v. Oberlee, 90 Mo. 668; McBeth v. Craddock, 28 Mo. App. 394. (4) The court did not err in permitting Fishburn and Adams to testify to the conversation in the store room. Fishburn under the testimony was agent of Barber in making this trade. Barber had placed him in the position of agent and it did not end until the trade was completed, and defendant was liable for his acts while thus acting and his statements should be submitted to the jury. One who placed another in a position in relation to his property calculated to deceive those dealing with such apparent agent is bound by his acts in that relation. De Baume v. Atchinson, 14 Mo. 543; Baker v. Railroad, 91 Mo. 152; Werth v. Ollis, 61 Mo. App. 401; Robinson v. Walter, 58 Mo. 380; Hornblower v. Campbell, 78 Mo. 581; Whiting, Admr. v. Crandall, 78 Mo. 593. (5) And if Fishburn was agent for both parties in the transaction and they had knowledge of the fact, his representations while acting in behalf of one bound such one. Robinson v. Jarvis, 25 Mo. 421. (6) It is not necessary to prove that the defendant made the alleged representations as to the land knowing them to be false, or that they were made with intent to deceive. The making of representations not knowing whether true or false was a fraud upon the plaintiff. Leach v. Bond, 129 Mo. App. 320; Dulaney v. Rogers, 64 Mo. 202; Caldwell v. Henry, 76 Mo. 254; Walsh v. Morse, 80 Mo. 568; Hamlin v. Abell, 120 Mo. 188; Nauman v. Oberlee, 90 Mo. 669; McBeth v. Braddock, 28 Mo. App. 393. (7) The fact that defendant (if a fact) requested plaintiff to go and look at the land in Arkansas did not relieve defendant from liability for his

false representations, and more especially so where his statements induced plaintiff to rely on their truth and forego other sources of information. Stones v. Richmond, 21 Mo. App. 21; McBeth v. Craddock, 28 Mo. App. 394; Shinebarger v. Shelton, 41 Mo. App. 280. (8) Where to discover the wrong, investigation is necessary, the party to whom the representations are made is not bound to make the investigation, but may rely on the representations made. Brolaski v. Carr, 127 Mo. App. 286; Hines v. Royce, 127 Mo. App. 718.

STATEMENT.—This was an action for damages for deceit. The respondent traded a stock of goods for 480 acres of land and respondent charged in his petition that the trade was procured by the fraudulent representations of the appellant. Judgment was rendered for plaintiff below for $3840, from which the defendant appealed.

The plaintiff in his petition alleged that prior to the 23d day of September, 1909, he owned a stock of merchandise and fixtures at Sarcoxie, Missouri, and the defendant owned 480 acres of land in Logan county, Arkansas; that on said day the plaintiff and defendant entered into an agreement whereby they exchanged properties, the defendant taking plaintiff's stock at marked prices, estimated at $5100 or $5200, and the plaintiff taking the land at eight dollars per acre, amounting to $3840, the defendant paying the plaintiff the difference in cash; that the plaintiff was induced to make said exchange by false representations of the defendant as to the quality of the land; that the defendant falsely represented that "said land was good grazing land; supposed to be underlaid with coal; would grow alfalfa or any crops that Missouri would grow; that the timber should be sufficient to pay for the land; that it was noted for its fine onions; and fruits; that one-half could be put into cultivation and the balance used for fruits; that the soil was a sandy loam with clay subsoil; that at the time of making the exchange plaintiff had not seen the land;

that the agent, or "go-between," who brought the parties together, represented to plaintiff that defendant was financially responsible, was a square fellow, and would guarantee the land to be as described, and thereby prevented the plaintiff from going to see the land. That after plaintiff had made the trade and ascertained the real condition of the land he and his wife executed a deed to the defendant for the land, tendered the same to the defendant and demanded that defendant return to plaintiff the said stock of merchandise and fixtures or pay to the plaintiff the value at which the land was taken, which the defendant refused; and that by reason of said false representations, exchange of properties and defendant's refusal to rescind or refund the value at which the land was taken by plaintiff, the plaintiff had been damaged in the sum of $4000, for which he prayed judgment. The petition does not state the actual value of the stock of merchandise and fixtures, nor the value of the land as it existed, nor what the value of the land would have been if it had been as represented.

The answer was a general denial.

The case was tried before a jury on the 23d day of June, 1910. At the opening of the trial the defendant objected to the introduction of any evidence for the reason that the petition does not state facts sufficient to constitute a cause of action, and for the reason that the alleged representations as appearing on the face of the petition were simply expressions of opinion of the defendant as to the character of the land and what it would produce and how much of it could be put in cultivation, and it did not appear that the opinion so expressed was not an honest opinion and was not believed to be true by the defendant; which objection the court overruled, the defendant excepting.

The evidence showed that the plaintiff, a resident of Sarcoxie, Missouri, was the owner of a stock of merchandise and fixtures and desired to dispose of them; that prior to the exchange of the properties the plaintiff

told the witness, Fishburn, the "go-between," an old acquaintance who was engaged in the real estate business at Carthage, Missouri, to get him a customer for said stock of goods; that Fishburn then went to defendant, a resident of Carthage, and obtained a written description of his land and sent it to the plaintiff, requesting him to come to Carthage and talk with the defendant about the trade. This description which constituted the defendant's representations as to the tract of land and constituted the basis of the trade, and Fishburn's letter to plaintiff, are as follows:

"Mr. Charley Adams, "Sarcoxie, Mo.

"Friend Charley: Enclosed please find description of 480 acres of land. The owner is here now, and if you can come down in the morning do so, and you can talk to him in person. He is a square fellow and he will guarantee the land to be as described. He wants $8 an acre and will pay you the difference in cash. Take your goods at invoice. Come down in morning as you can deal with him, and I consider his land worth the money.

"Very truly yours,

"M. P. FISHBURN."

"Four hundred and eighty acres in Logan county, Ark., 4 miles from Havana, Yell county, Ark. Timber is oak and pine. Land broken but fine grazing land and fruit land; supposed to be underlaid with coal. Writer has seen croppings and had samples one mile west of this land and it is claimed this tract shows more coal out-croppings. Coal fine quality. Land will raise alfalfa and any crop Missouri will raise; is noted for its fine onions and fruits of all kinds. Timber should pay for land. Perhaps half could be put in cultivation. Balance used for fruit. Finest of water. Soil, sandy loam, with clay subsoil."

Adams did not go to Carthage and Fishburn states, "I knew of Mr. Barber having this land. I saw Mr. Barber, talked to him, and framed up a deal which Mr. Barber would agree to make if the goods were satisfac-

tory." Fishburn took defendant to Sarcoxie and intro-
duced him to plaintiff and a deal was agreed on, pro-
vided the land suited the plaintiff, and it was agreed
that plaintiff was to go and see the land before closing
the deal.   The defendant was then ready to return to
his home in Carthage, but, as defendant's evidence tends
to show, as he was leaving the store, Fishburn and plain-
tiff went to the rear of the store and had a private con-
versation in which Fishburn in substance said to Adams,
the plaintiff, that he (Adams) had a written statement
of the land and that he (Fishburn) knew of Barber's
dealings and considered him square and honest and
thought the land to be as represented, and also if it was
not as described that Adams could come back on Barber.
Whereupon, plaintiff decided not to go and look at the
land but to close the deal.   The defendant was then
called in and the trade was closed, the parties entering
into the written contract.   At the time of closing the
trade, defendant testified he did not know that Fishburn
had said anything to plaintiff to induce him to refrain
from examining the land before he closed the deal.

The testimony also shows that defendant, during
the negotiations and before the deal was closed, stated
to plaintiff that he had not been on the land except one
corner.   According to defendant's theory, the state-
ments and representations made by the defendant to
plaintiff about the land were not based upon his per-
sonal knowledge of the land but upon representations
made to the defendant by one Calhoun from whom de-
fendant bought the land.

The testimony shows that the market value of im-
proved valley land in the vicinity of the 480 tract was
from eight to ten dollars per acre, that unimproved
valley land was worth about five dollars an acre, and
improved mountain land was worth about two and one-
half dollars per acre.   The evidence tended to show that
the 480 acres was on the side of Magazine Mountain,
was rough and rocky, and too broken for cultivation and

covered with bluffs fully twenty feet high and so steep that a man would have to climb a tree to get up, and that the 480 acre tract was worthless.

After the sale, the plaintiff having examined the land and ascertained its condition, tendered defendant a deed and asked a rescission of the contract. Both plaintiff and defendant claimed that Fishburn was not his agent during the negotiations, but afterwards each party paid him the sum of fifty dollars, each claiming said payment not to be a commission, but to be a mere gratuity. It may be mentioned here that the total stock of merchandise invoiced at the agreed price of $4521.88. On October 8, 1909, the deed to the 480 acre tract was delivered to plaintiff and the difference in cash was paid him and defendant took possession of the merchandise consummating the deal.

The court at plaintiff's request gave the following instructions:

"1.   The court instructs the jury that if they find and believe from the evidence that on or about the 23d day of September, 1909, plaintiff and defendant entered into a contract whereby plaintiff sold to defendant a stock of merchandise, fixtures and furniture in the city of Sarcoxie, Missouri, and was to receive in payment therefor 480 acres of land located in Logan county, Arkansas, at and for the price and sum of $8 per acre; that defendant represented to plaintiff that said land was fine grazing and fruit land, and was noted for its fine onions and fruits of all kinds; that perhaps half of the land could be put in cultivation and the balance used for fruit; that the soil was a sandy loam with clay subsoil, and if the jury believes that plaintiff, in trading for said land relied on the representations of said defendant, and if the jury believes further that the plaintiff and defendant invoiced said stock of goods, fixtures and furniture to the defendant and that the same amounted to $5034.29; that the defendant accepted and agreed to pay that amount for said goods, fixtures and furniture,

and deeded the Arkansas land to plaintiff in payment therefor to the amount of $3840 and plaintiff accepted said deed, relying on defendant's representations as to the character and quality of said land; and if you further find that said representations so made by defendant were false and that defendant made such representations without knowing whether true or false, for the purpose of inducing plaintiff to trade with him, then your verdict will be for the plaintiff, and you will assess plaintiff's damages at the difference in the value of the land as it actually is, and what the value of the land would be if said land had been as defendant represented, not to exceed $3,840.

"2. The court instructs the jury that if they believe from the evidence that the witness, Fishburn, was the agent of defendant alone in making the trade between plaintiff and defendant, or was the agent of both plaintiff and defendant, then the representations and statements made by Fishburn to plaintiff while acting on behalf of the defendant were binding on defendant. And if the jury believes from the evidence that the acts and statements of Fishburn to plaintiff, if any, to induce him not to go to Arkansas to examine the land were made for and on behalf of defendant, then the defendant would be bound thereby.

"3. The court instructs the jury that plaintiff had a right to rely on the representations of the defendant, if he did so in good faith, and if plaintiff did not go to see said land before closing the trade by reason of representations as to standing and character and responsibility of defendant Barber, then the fact that plaintiff did not go to see the land does not affect his right to recover in this case.

"4. The court instructs the jury that, even though they may believe that the defendant never had seen this land, yet if the jury further believes from the evidence that the defendant made the representations as set out in the written statement offered in evidence, knowing

that said representations were false, or made them without knowing whether they were true or false, then the defendant is bound thereby, and if they were false and the plaintiff made the trade with defendant relying on said representations, then your verdict in this case should be for the plaintiff."

At the defendant's request the court gave the following instructions:

"6. The court instructs the jury that the statement of the defendant to the plaintiff contained in the writing read in evidence that the timber on the land should pay for the land is a mere expression of opinion and is not such a representation that plaintiff can found an action on or recover damages for, and you will exclude this statement from your consideration in arriving at a verdict.

"7. The court further instructs the jury that the evidence in this case shows that the plaintiff and defendant were acting at arm's length, and each trying to get the most favorable contract possible out of the other; and if the jury find from the evidence that the defendant requested the plaintiff to go and examine the land in Arkansas which he was about to accept in exchange for his stock of goods, and that the plaintiff afterwards concluded to close the deal without an examination of the land, and that defendant did or said nothing to induce the plaintiff to change his mind and to refrain from an examination of the land, then, in that case, your finding and verdict should be for the defendant.

"9. The court further instructs the jury that although you may find from the evidence that the defendant falsely represented to the plaintiff that the Arkansas land was fine grazing land and fine fruit land, and was supposed to be underlaid with coal, and that the defendant had seen croppings and had samples of coal from land one mile west from said land, and that this tract showed more croppings than that, and that the coal was of fine quality, and falsely represented that

said land would raise alfalfa or any crop that Missouri would raise, that said land was noted for its fine onions and fruits of all kinds, and further represented that the timber on said land would be sufficient to pay for said land, that one-half of said land could be put into cultivation and the balance used for fruit, and that the soil was a sandy loam with a clay subsoil, that the timber on said land was oak and pine; yet, nevertheless, it was the duty of the plaintiff, as an ordinarily prudent man to examine into the nature and character of said land, and not to rely on such representations and opinion of the defendant, and the plaintiff cannot recover any damages on account of such representations, unless the plaintiff has shown by the preponderance or greater weight of the evidence that the defendant by some act or words of his prevented the plaintiff from going to and examining said land and determining for himself its character and nature.

"10. The court instructs the jury that if the jury finds from the evidence that the plaintiff and defendant met at plaintiff's store, in Sarcoxie, and while negotiating on the deal, the defendant requested the plaintiff to go and examine the land for himself, and that an agreement to that effect was reached, and that afterwards during the same day, the plaintiff, without being induced to do so, by the defendant, waived such examination and entered into the contract read in evidence, then he is precluded by his own negligence from recovering any damages in this case."

The defendant also requested the court to give the following instruction:

"5 The court further instructs the jury that if the jury find from the evidence that witness, Fishburn, was the agent for the plaintiff, or was agent for the plaintiff and defendant, then the act of Fishburn in inducing the plaintiff not to go to Arkansas and examine the land would not be the act of the defendant and the defendant would not be bound thereby."

The court refused to give this instruction in this form, but modified it and gave it in the following form:

"5.    The court instructs the jury that if the jury find from the evidence that the witness, Fishburn, was the agent for the plaintiff alone, then the act of Fishburn in inducing the plaintiff not to go to Arkansas and examine the land, would not be the act of the defendant, and the defendant would not be bound thereby."

The defendant also requested the court to give the following instruction which the court gave after adding thereto the words in italics:

"8.    The court further instructs the jury that if you find from the evidence that the defendant had not been upon the land traded by him to the plaintiff, and that the defendant informed the plaintiff at the time of the negotiations and at the time of the alleged representations made by him that he, the defendant, had never been upon the land and had never examined it, and that under such circumstances the plaintiff, as an ordinarily prudent man, could not rely on such representations, but it became and was the plaintiff's duty to examine said land and determine for himself, as to the nature and character of said land, and if he failed to do so, he is precluded from recovering any damages on account of such representations *unless the plaintiff was prevented from examining said land by the act of this defendant.*"

The court also gave the following instructions:

"You are instructed that your verdict should be plainly and legibly written in ink upon a full length sheet of paper. If you find the issues in favor of the plaintiff, your verdict should be in the following form: 'We, the jury, find the issues in favor of the plaintiff and assess his damages at the sum of —— dollars.' And if you find the issues in favor of the defendant, your verdict should be in the following form: 'We, the jury, find the issues in favor of the defendant.' Three-fourths of your number, or nine, concurring may return a ver-

dict in this case; if your verdict be agreed to or concurred in by your entire panel, your foreman alone should sign the verdict, adding the word, 'Foreman,' after his name; if your verdict be agreed to or concurred in by less than the entire panel, all those jurors who agree to or concur in said verdict should sign the verdict."

The foregoing were all the instructions given to the jury.

The defendant also requested and the court refused to give the following instructions:

"1. The court further instructs the jury that the alleged representations charged to have been made by the defendant to the plaintiff that the timber on said land should be sufficient to pay for the said land, and that one-half of said land could be put into cultivation and the balance used for fruit, were mere expressions of opinion of the defendant, and even though you might find that the timber on said land is insufficient to pay for said land, and even though you might find that one-half of said land could be put into cultivation, and the balance used for fruit growing, the mere expression of such opinion by the defendant, would not be the basis of recovery of damages from the defendant by the plaintiff, and the plaintiff would have no right to rely upon the mere expression of defendant's opinion as to the value of said land or what the said land would produce.

"2. The court further instructs the jury that if the jury believe and find from the evidence that during the negotiations for the trade between the plaintiff and the defendant and before the said deal was closed, the defendant informed the plaintiff that the defendant had not examined the land in question, and that the statements and representations made by the defendant were based upon representations made to the defendant by others when defendant bought the land, then in that case, the statements were mere expressions of opinion

and the plaintiff had no right to rely thereon and cannot recover any damages in this action.

"3. The court further instructs the jury that the representations alleged by the plaintiff to have been made by the defendant, that the Arkansas land would raise alfalfa or any crop that Missouri would raise, that said land was noted for its fine onions and fruits of all kinds, were mere expressions of the opinion of the defendant, and such expressions of opinion even though acted upon by the plaintiff would not constitute such a fraudulent representation as to authorize the plaintiff to rely upon same or to recover damages on account of such expressions of opinion.

"4. The court further instructs the jury that under the law and the evidence in this case, they should return a verdict in favor of the defendant.

"5. The court further instructs the jury that before the plaintiff would be entitled to recover any damages against the defendant on account of any false representations that he may have made to the plaintiff in respect to the character and nature of said land, the plaintiff must show to your satisfaction by a preponderance or greater weight of the evidence that the defendant knew at the time of making said representations that the said representations were false, and that said representations were knowingly made by the defendant to the plaintiff, and that they were believed to be true and acted upon by the plaintiff in the making of said trade.

"6. The court instructs the jury that the representations claimed to have been made by the defendant to the plaintiff, that the Arkansas land was fine grazing land and fine fruit land and was supposed to be underlaid with coal, were a mere statement of the opinion of the defendant, and were not such representations as the plaintiff had a right to rely upon, and the plaintiff is not entitled to recover any damages from the defendant on account of such expressions of opinion, even though

you may find from the evidence that the defendant made such statements."

The jury returned a verdict in favor of the plaintiff for the sum of $3840, being the entire value placed upon the land at $8 per acre. After an ineffectual motion for a new trial and motion in arrest of judgment, defendant duly appealed to this court.

## OPINION.

NIXON, P. J.—I. Appellant assigns as error that the allegations of the petition are insufficient to sustain a judgment for deceit and that his demurrer to the petition on that account should have been sustained. The petition, after alleging the specific false representations, enumerates them in detail at great length and then proceeds to charge what is commonly called the *scienter,* in these words:

"Plaintiff further says that said representations so made by defendant were made to the plaintiff fraudulently and intentionally for the purpose of inducing plaintiff to enter into said contract and to make said exchange of his stock of merchandise and fixtures to defendant for said land."

The objections appellant makes to this petition are, that plaintiff must allege and prove that the representations upon which his action is based were false; that they were known to be false by the defendant at the time they were made; or that the representations were made by defendant as of his own knowledge when in part he had neither any knowledge on the subject nor any reasonable grounds to believe the representations to be true; and that the plaintiff's petition does not come up to these requirements.

It will be seen that the specific statements of the petition are "that the defendant fraudulently and intentionally for the purpose of inducing plaintiff to enter

into said contract" made said representations. It must be remembered in the discussion of the sufficiency of these allegations to sustain an action for deceit, that this is not an action in equity to rescind a contract procured by fraudulent representations, but an action at law for damages caused by deceit and that under the law a *scienter* is an essential element of actionable fraud. It will be seen by a perusal of the petition that it first sets out the representations made by the defendant and follows this with the allegation that the plaintiff entered into the contract relying upon the representations of the defendant, and then sets out the inducements and statements made by the defendant to induce the plaintiff not to go to Arkansas and examine the land before making the trade. The words used are that plaintiff "fraudulently and intentionally for the purpose of inducing plaintiff to enter into said contract" made said representations. The word "fraudulent" is defined by Webster as follows: "Using fraud; trickery; deceit. Dishonest. Synonym: Deceitful, fraudful, guileful, crafty; treacherous; dishonest, etc" and while the authorities hold with great uniformity that in action of this kind it is necessary to charge the *scienter,* no express form of words is required to be used for that purpose, nor is it always necessary that the knowledge of the falsity of the representations be expressly stated in so many words. And it has been held that the allegation that the representations were fraudulently or deceitful avers words. And it has been held that the allegation that the representations were fraudulently or deceitfully made sufficiently avers the *scienter* as the word "fraudulently" or the word "deceitfully" excludes the idea of mistake and imports that the representations were made with knowledge of their falsity. The allegation of an intention to deceive is not always to be made in direct terms. And while the plaintiff must, in substance, aver that the representations were made with knowledge of their falsity, this re-

quirement is complied with if from the averments of the petition it can be fairly gathered that the defendant falsely and fraudulently deceived the plaintiff. Especially is this considered sufficient after verdict. [Barber v. Morgan, 51 Barb. (N. Y.) 116; Zabriskie v. Smith, 13 N. Y. 322; Bayard v. Malcolm. 2 Johns. (N. Y.) 550.] In the case of Nauman v. Oberle, 90 Mo. 666, the charge was held sufficient that "the defendant falsely, fraudulently and deceitfully represented and guaranteed. [See also, Hoffman v. Gill, 102 Mo. App. 320, 324, 77 S. W. 146; Fenwick v. Bowling, 50 Mo. App. 1. c. 521; Carr v. Spangler, (N. Y.) 138 App. Div. 32.] Under the authorities cited, the charge of the *scienter* in this petition was undoubtedly sufficient as the allegations charge that the representations were fraudulently made, which implies that they were knowingly made by the defendant in bad faith with knowledge of their falsity.

Nor does this conclusion conflict with the statement of the law by our Supreme Court in the case of Remmers v. Remmers, 217 Mo. 1. c. 557, 117 S. W. 1117, that in order to state a cause of action for deceit it is essential to aver that such representations were false and so known to be by the defendant, and that such representations were made with the intention of deceiving plaintiff, and that plaintiff was deceived thereby, and relying upon such promises and representations he was induced to act to his injury. This opinion could not be reasonably construed to mean that the necessary allegations can not be substantially stated without the use of formal statement, nor that any particular set phrase or formal words are necessary in order to substantially make the charge. The opinion in that case turned on the elements necessary to be stated rather than the sufficiency of their statement. We conclude that the petition is sufficient to withstand the assault after issues joined and especially after verdict.

II. The sufficiency of the petition is further assailed by appellant in that it does not state what the value of the real estate would have been if it had been as represented. The petition alleges that the defendant traded the plaintiff 480 acres of land for the price of $8 an acre in payment of his stock of goods and that the defendant was to pay the plaintiff the cash difference, and that the stock of goods invoiced about $5000, and that the land was conveyed in pursuance to the contract to the plaintiff and that the stock of goods were transferred to the defendant and the difference was paid in cash, and that by reason of the false representations the plaintiff was damaged in the sum of $4000. We think this contention is not sustained and that the allegations of the petition were sufficiently specific to show the nature of the damages claimed,—especially in consideration of the plaintiff's evidence which shows the 480 acres in controversy to have been actually worthless.

III. The further contention is made that the plaintiff cannot both rescind and maintain an action of deceit, and that if he elects to rescind he may recover what he has parted with under the contract but not recover any damages for fraud. The law is that the plaintiff in cases of fraud has a choice of remedies. And while his affirmance may preclude him from rescinding the contract, he may rescind and yet maintain an action for deceit. [Warren v. Cole, 15 Mich. 265; 20 Cyc. 87.]

IV. Appellant also objected to the introduction of certain evidence of the witness, Fishburn, who was the intermediary between plaintiff and defendant in making this trade. It appears that after the parties met at Sarcoxie at the store of the plaintiff at a certain stage of the negotiations and after they had been partially concluded—the defendant's evidence tended to show —there was an agreement between plaintiff and defendant that at the request of the defendant the plaintiff would go to Arkansas and examine the land before con-

cluding the agreement, and if the examination proved satisfactory the trade was to be then concluded. Upon this arrangement being made between the parties, the testimony of Fishburn and defendant tended to show that the defendant left the storeroom as though the trade was off for the present and that Fishburn and plaintiff retired to the back of the storeroom and had a private conversation in which the plaintiff's intention to go to Arkansas to examine the land was changed and the contract was immediately after this conversation concluded. Fishburn was allowed to testify in this connection as follows:

"We were preparing to come back home, leaving Mr. Adams to go and see the land before he rendered final decision, but I talked to Mr. Adams and I told him that he had Mr. Barber's written statement of the land, that I had known Mr. Barber, knew of his dealings here, and that I considered him fair and honest, and that he would find the land as represented. I told him in my opinion that if it was not that way he could come back at Mr. Barber. That is in general the substance. . . . Then I called Mr. Barber in. I don't remember whether he was just outside the door or out in front. Mr. Barber came back and then we all three talked it over and they agreed to trade without plaintiff going to see the land, and drew up the contract they traded on."

The particular objection that appellant makes to the competency of this evidence is that the defendant and plaintiff had come to an agreement that the plaintiff should go and examine the land in person and the defendant had left the store and was not present at the time the conversation took place between Fishburn and plaintiff, and that the agency, if any existed, between Fishburn and defendant, was at an end. This objection seems to overlook a portion of the plaintiff's evidence in this case in which he testified: "Q. What was said at that time, if anything, about going to see the land? A. I said I would go and see the land. Mr. Fishburn

said there was no use to go see it. Q. Was Mr. Barber present? A. Yes, sir; he says, 'No use to go see it, I have a written description and Mr. Barber is worth the money. If it is not like he says it is, he is worth the money.' He says, 'It's all right, let me see it.' I handed it to him. He read it and he says, 'Yes, it's all right, I will stand by it, whatever I say I stand by.' "

But aside from all this, there was evidence for the consideration of the jury as to whether the part performed by Fishburn at the time the trade was consummated and his representations to Adams in which he induced Adams not to go to Arkansas, was a part of the original design arranged between Fishburn and the defendant before they went to Sarcoxie to make the deal, in which Fishburn stated: "I knew of Mr. Barber having the land. I saw Mr. Barber, talked to him and framed up a deal which Mr. Barber would agree to make if the goods were satisfactory." If the program that was pursued at Sarcoxie at the time the deal was perfected in the store was in pursuance of an arrangement between Barber and Fishburn and a part of the "framing up" of the deal referred to by Fishburn, or if at the time of the conversation, which is objected to by appellant, Fishburn was acting as the agent of the defendant and made these representations to the plaintiff for the purpose of fraudulently inducing him not to examine the land or make a personal investigation as to the representations that had been made to him, then the evidence was competent for the consideration of the jury. On the question of the intent of the parties, and whether plaintiff relied upon defendant's representations, the evidence was properly admitted; and also as being a part of the res gestae.

V. Error is also assigned in the giving of plaintiff's instructions numbered one and four which are as follows:

"1. . . . and if you further find that said representations so made by defendant were false and that defendant either knew that they were false or that

defendant made such representations without knowing whether true or false, for the purpose of inducing plaintiff to trade with him, then your verdict will be for the plaintiff. . . ."

"4. The court instructs the jury that, even though they may believe that the defendant never had seen this land, yet if the jury further believes from the evidence that the defendant made the representations as set out in the written statement offered in evidence, knowing that said representations were false, or made them without knowing whether they were true or false, then the defendant is bound thereby, and if they were false and the plaintiff made the trade with defendant relying on said representations, then your verdict should be for the plaintiff.

The propriety of the giving of these instructions in this case can only be satisfactorily determined by an examination of the nature of appellant's defense and the evidence he offered as to his knowledge of the condition, the soil, etc., of the 480 acres of land. In this connection we give the following portions of the evidence material to this inquiry:

"I told Mr. Adams I had 2720 acres at this particular price that I had never seen except one corner of it. Q. State what you said to him? A. I told him the mountain land was good fruit land; it would grow any crop Missouri would; that I had raised alfalfa on part of my 2720; that I had never seen this 480 except the corner, but that it had been represented to me to be the same kind of land by Mr. Calhoun, from whom I bought it, and by Mr. Calhoun's agent. And we agreed that Mr. Adams should go down and see the land. Q. What did you tell him about his going? A. I told him I was satisfied if he would go down he would trade; I wanted him to go down and he said he would. . . . I told Mr. Adams also that it was represented to me that all of the oak timber on all of this 2720 was intact, had never been cut, but that the pine on all the 2720 acres, including

the pine on this 480 acres, had been cut. I have found since that I did misrepresent that—that it has not been cut. . . . Mr. Fishburn went back and talked with Mr. Adams in the rear of the store, I don't know whether Mr. Adams called him back or not. I believe I stayed up in front of the store and he came up and said, 'We won't take this train; we will go out and get supper and come back and sign a contract.' "

This evidence, considered together, constitutes appellant's defense and the evidence was evidently offered to show that the misrepresentations by appellant as to the land were not made in the form of unqualified personal knowledge, but upon information and belief in which the speaker gave the sources of his knowledge, and tended to show that though not true they were made with defendant's belief in their truth.

Whether actual bad faith must be shown in a common-law action for deceit, to justify a recovery, has been the subject of much controversy. The question was, however, settled in England by the decision of the House of Lords in Derry v. Peek, L. R. 14 App. Cas. 337, wherein it was finally held that there can be no recovery in such an action where the defendant made the statement complained of in the honest belief of its truth, however unreasonable such belief. The United States Supreme Court in Lord v. Goddard, 13 How. 198, 14 L. Ed. 111, seems to have taken the same view, and substantially the same holding was announced in Kimber v. Young, 137 Fed. 744, and in Pieratt v. Young (Ky.) 49 S. W. 964, that in an action for deceit, either knowledge on the part of the defendant of the falsity of his alleged representation or what in law is equivalent thereto must be proven or the action fails. Our own Supreme Court in Dunn v. White, Adm'r, 63 Mo. 181, said: "The now generally recognized doctrine is that in order to support a personal action for fraudulent representations, it is not sufficient to show that the party made statements which he didn't know to be true and which were

in fact false." If spoken honestly, and the speaker believes his representation to be true, he is not liable in an action for deceit for honest mistake or error in judgment. [Koontz v. Kaufman, 31 Mo. App. 397; Snyder v. Stemmons, 151 Mo. App. 156, 131 S. W. 724, 727.]

In the case of Paretti v. Rebenack, 81 Mo. App. 494, the instruction given and condemned was essentially identical with the one given in the case under consideration. The court held that to recover damages caused by fraudulent misrepresentations in an action at law, it is necessary to allege and prove, first, that the representations were untrue; second, that defendant knew them to be false when made, or that he made them as of his own knowledge when in fact he had no knowledge whatever on the subject; third, that the plaintiff had a right to and did rely upon the truth of such representations and suffered damage or loss by reason of their falsity. And the court held that the plaintiff's instruction having omitted, 'Or that he made the representations as of his own knowledge when in fact he had no knowledge whatever on the subject,' such omission rendered the instruction given by the court at the instance of the plaintiff vitally defective. And the court there said: "Hence in the case at bar when the triers of the fact were directed to find against the defendant (on the second alternative upon which the law predicates an intent to deceive) if he did not know 'that they (representations) were true' the jury might well have rested their adverse finding on the assumption that whatever reasonable grounds defendant had for believing his statements to be true, still he did not in fact know them to be true. This instruction was a clear misstatement of the law applicable to the facts as developed on the trial of this case, and necessitates a reversal of the judgment and a remanding of the case to be tried in conformity with this opinion." [See also, Walsh v. Morse, 80 Mo. 568; Hamlin v. Abell, 120 Mo. 188, 25 S. W. 516.] On a retrial of this case, the instruction should be so framed

as to present the question to the jury whether the false representations made by the defendant, if any, were made as of his own knowledge and not as a mere matter of opinion or general assertion about a matter of which he had no knowledge whatever.

VI. Appellant contends that the court erred in giving instruction numbered two as follows:

"2. The court instructs the jury that if they believe from the evidence that the witness, Fishburn, was the agent of defendant alone in making the trade between plaintiff and defendant, or was the agent of both plaintiff and defendant, then the representations and statements made by Fishburn to plaintiff while acting on behalf of the defendant were binding on the defendant. And if the jury believe from the evidence that the acts and statements of Fishburn to plaintiff, if any, to induce him not to go to Arkansas to examine the land were made for and on behalf of defendant, then the defendant would be bound thereby."

This instruction told the jury that if they found that Fishburn was the agent of defendant alone in making the trade, or was the agent of both plainiff and defendant, then the representations and statements made by Fishburn to plaintiff while acting on behalf of the defendant were binding on the defendant. We think the court committed no error in giving this instruction as the statements of the agent, if acting within the scope of his authority, would be proper evidence for the consideration of the jury in arriving at a conclusion as to whether the plaintiff relied upon the false representations of the defendant as to the condition and quality of the land.

VII. The court's instruction as to the measure of damages is contained in plaintiff's instruction No. 1 and is as follows:

"If your verdict is for the plaintiff, you will assess plaintiff's damages at the difference in the value of the

land as it actually is, and what the value of the land would be if said land had been as defendant represented, not to exceed $3840."

The majority of jurisdictions apply the rule that the defrauded vendee is entitled to the difference between the value of the property that he received and its value had the representations made been true. [Shinnabarger v. Shelton & Lane, 41 Mo. App. l. c. 158; Caldwell v. Henry, 76 Mo. 257; Hicks v. Deemer (Ill.) 58 N. E. 252; McCready v. Phillips (Neb.) 76 N. W. 885.]

VIII. As this case is subject to retrial, attention is called to the fact that under the evidence in this record the doctrine of caveat emptor does not apply. The rule often announced by the courts of law is that where the vendor and purchaser are dealing at arm's length and where the subject-matter of the sale is at hand and both parties have equal opportunities to examine, the purchaser must protect himself and cannot rely upon representations made by the vendor. In this case, however, there were not equal opportunities for examination and the plaintiff was not required to make investigation. The 480 acres of land which was conveyed by the defendant to the plaintiff was in another state, one hundred or more miles away, and under those circumstances it would be unreasonable to apply the rule that the plaintiff was required to examine the land before making the purchase. To go and examine the land would involve expense and inconvenience, and the plaintiff had a right to trust to the representations made by the defendant as to the character, situation and surroundings of the land at such distant place when he could not, as we have stated, make a personal examination; and if the plaintiff had no knowledge or information of his own, he had a right to rely upon the statements made by the defendant if he made them as of his own knowledge. There is no rule of law which requires men in their business transactions to act upon the presumption that all men are knaves and liars and which de-

clares them guilty of negligence and refuses them redress whenever they fail to act upon that presumption. The fraudulent vendor cannot escape from liability by asking the law to applaud his fraud and condemn his victim for his credulity. Strand v. Griffith, 97 Fed. 854. The unmistakable drift of authority is towards the doctrine that the wrongdoer cannot shield himself from liability by asking the law to condemn the credulity of his victim. [Noyes v. Belding (S. D.) 59 N. W. 1069; Watson v. Molden (Idaho) 79 Pac. 503.] The party perpetrating a deliberate fraud will not be allowed to take advantage of his rascality by setting up the negligence of the defrauded vendee and saying to him, in effect, "I admit that I designedly defrauded you, but you need not have been duped by me had you not trusted me and negligently relied upon my intentionally false words." [Judd v. Walker, 215 Mo. 312, 114 S. W. 979.] By the overwhelming weight of authority ordinary prudence and diligence does not require a person to test the truth of representations made to him by another as of his own knowledge, and with the intention that they shall be acted upon, if the facts are peculiarly within the other party's knowledge or means of knowledge, though they are not exclusively so, and though the party to whom the representations were made may have an opportunity of ascertaining the truth for himself. [14 Am. and Eng. Ency. Law, 120, 121; McMullen v. Rousseau (Wash.) 82 Pac. 883.]

IX. In the giving of the instructions in this case, both plaintiff and defendant ignored the fact that the action could be maintained without the plaintiff having made an examination of the land, and as the record now stands, neither party has any cause of complaint on account of error committed in that behalf, the court having instructed by their consent on that theory. But as the case is to be retried, attention is called to the fact that the doctrine of caveat emptor does not apply in this case.

X.   The testimony as to the agreement between plaintiff and defendant to the effect that the plaintiff was to go to Arkansas and examine the land for himself, and also as to the inducements held out by Fishburn to the plaintiff not to make an examination was proper for the consideration of the jury in arriving at their conclusion as to the ultimate facts as to whether defendant fraudulently and intentionally made false representations to the plaintiff for the purpose of inducing him to enter into the contract, or whether he made such representations as of his own knowledge when in fact he had no knowledge whatever on the subject, and that the plaintiff relied upon the truth of such representations and suffered damage by reason of their falsity. Hence the defendant's instructions numbered 8, 9 and 10 as originally asked and as modified and given by the court should have been refused, and also plaintiff's instruction numbered 3.

The primary issues involved in this case are few and easily apprehended and in the retrial the jury's attention should not be diverted from these issues nor their deliberations impaired and confused by instructions on collateral issues.

The judgment is reversed and the cause remanded. All concur.

Springfield Court of Appeals, June 12, 1911.   Motion for Rehearing Overruled July 20, 1911.