## HOFFMAN, Respondent, v. GILL, Appellant.

### St. Louis Court of Appeals, November 17, 1903.

1. **Pleading: FRAUD.** That "the defendant corruptly and fraudulently, with the intent to cheat and defraud plaintiff," etc., is a sufficient allegation of fraud in any court.

2. **Fraud: INSTRUCTIONS.** In an action for damages resulting from defendant's overvaluing jewelry, thereby inducing plaintiff to loan money on same, where defendant testified that he was aware of the disposition to be made of the jewelry by a third party, at the time he pretended to examine and estimate the value thereof for plaintiff, being himself the owner of the jewelry, an instruction that if plaintiff loaned the third party money and took certain jewelry as collateral security, and if plaintiff asked defendant the value of same, and defendant gave plaintiff his honest belief as to said value, believing same to be true, and that if defendant was in no conspiracy with said third party and had no knowledge of the alleged loan between plaintiff and third party and was acting without reward in the usual course of business, plaintiff can not recover, was properly refused, because there was no evidence to support it.

3. ———: **PUNITIVE DAMAGES.** Punitive damages are not recoverable except where malice, violence, or passion and wanton recklessness is shown. (GOODE, J., dissenting.)

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood*, Judge.

AFFIRMED SI.

*Dodge & Mulvihill* for appellant.

(1) There was no cause of action stated in the petition, inasmuch as it failed to state that the defendant

did falsely, fraudulently and knowingly make the statements, etc. Koontz v. Kaufman, 31 Mo. App. 416; Tootle v. Lysaght, 65 Mo. App. 139. (2) A mere false representation of value where no warranty is intended is no ground of relief to a purchaser, because such assertion is a mere matter of opinion, which does not imply knowledge, and is a thing about which men may differ. Cornwall v. McFarland, 150 Mo. 377; Nauman v. Oberle, 90 Mo. 666; Anderson v. McPike, 86 Mo. 293; Lovelace v. Suter, 93 Mo. App. 429; Cahn v. Reed, 18 Mo. App. 115; State v. Wheeler, 79 Mo. 366; State v. Miller, 111 Mo. 542; Caldwell v. Henry, 76 Mo. 254. (3) Under all the circumstances in this case the refusal of the court to give the third instruction asked by defendant was error. Church v. Railroad, 119 Mo. 203; Hartpence v. Rogers, 143 Mo. 623; Miles v. Withers, 76 Mo. App. 87.

*H. D. McCorkle, H. M. Walsh* and *H. Slikerman* for respondent.

(1) If in a contract of sale the vendor knowingly allowed the vendee to be deceived as to the things sold in a material matter, his silence is grossly fraudulent. McAdam v. Cates, 24 Mo. 223; Gottschalk v. Kircher, 109 Mo. 170; Grigsby v. Stapleton, 94 Mo. 423; Morley v. Harrah, 167 Mo. 74; Manter v. Truesdale, 67 Mo. App. 435. (2) The case of a third person apparently disinterested, or the case of a vendor or vendee pretending to act for another, when in fact he is acting for himself, may be very different indeed from that of a vendor, who openly puffs his goods. In the latter case the maxim of *caveat emptor* applies. While the other establishes a quasi confidential or fiduciary relation. Cahn v. Reid, 18 Mo. App. 115; Medbury v. Watson, 47 Mass. 246; Fisher v. Budlong, 10 R. I. 525; Picard v. M'Cormick, 11 Mich. 68; Dwight v. Chase, 3 Ill. App. 67.

STATEMENT.

This cause went to the circuit court by appeal from a justice's court. The evidence is that in 1898, and for many years prior thereto, defendant Gill owned and conducted a jewelry store in the city of St. Louis. In 1898 he had an arrangement with one Joseph Finnegan, by which Finnegan was furnished articles of jewelry by defendant to be taken out and sold, and when sold Finnegan would pay defendant his cost price and a per cent of the amount realized over and above the cost. In May, 1898, Finnegan was furnished by the defendant with one diamond stick pin, a large sunburst and a Marquise diamond ring to sell and account for. On the fifteenth of May, Finnegan called on plaintiff and wanted to borrow five hundred dollars and offered to pledge the jewelry as security for the loan. Plaintiff was anxious to make the loan, and had previously advertised that he had money to loan, but was not acquainted with Finnegan, nor did he know the value of the jewelry, and it was agreed between Finnegan and plaintiff that an expert should be consulted and his opinion of its value obtained. The jewelry houses of Eugene Jaccard and Mermod-Jaccard were seen, but neither would give an opinion as to the value of the jewelry. Plaintiff then remembered that his brother knew the defendant Gill and he procured a letter of introduction from him. With this letter he and Finnegan called on defendant for his opinion as to the value of the jewelry.

Plaintiff testified as follows as to what took place on the occasion:

"I showed the diamonds to Gill, and he examined them, and said, 'I can not place any price on these goods so hurriedly, you will have to leave these.' 'Oh, well,' I said, 'don't be in a hurry, take your time, but be sure you are right,' and he kept them over night and told me to come again next day, I would have to give him about

twenty-four hours to examine the goods. I called next afternoon and asked whether he had examined them. He told me he had. I said, 'What do you think they are worth?' 'Well, they are reasonably worth $600 of any man's money.' And after that I felt satisfied that I could loan that amount of money, $500, on them, and I did.''

Finnegan testified that he was present and something was said about the jewelry but he did not understand what was said.

Gill testified that he had the goods in his possession about five minutes; that he did not keep them over night; that he had been in the business for seventeen years and was an expert on the value of diamonds; that plaintiff asked him what the value of the goods was in his opinion, and that he told him they were worth about $600, and that they were worth that sum; that he did not tell or intimate to plaintiff that he had any interest in the goods or that they were his, or that there was an agreement between himself and Finnegan as to what he was to get out of the goods if disposed of.

After getting defendant's opinion of the value of the goods, plaintiff loaned Finnegan five hundred and seven dollars and took Finnegan's individual note due in thirty, sixty and ninety days, and the jewelry as a pledge to secure them.

Finnegan testified that he paid defendant his cost price of the goods and divided with him the profits out of the money he got from the plaintiff. He further testified that he never called to pay the notes; that he treated the transaction as a sale of the goods; that the jewelry was good for the money and was, in fact, well worth the money.

Kranke, a witness for plaintiff, testified that he had been in the jewelry business for seventeen years; that he had seen and examined the goods and purchased them from the plaintiff and they were worth about four hundred dollars.

After the notes became due, Finnegan could not be located by the plaintiff and the testimony is that he (Finnegan) is wholly insolvent; that plaintiff had the jewelry examined in Pittsburg, New York and St. Louis and tried to sell it in all three cities and finally sold it to Kranke for two hundred and ninety-eight dollars, the best price he could obtain.

In March, 1902, Finnegan for the first time informed plaintiff of the interest which Gill had in the jewelry and plaintiff then commenced this suit to recover two hundred dollars actual damages and three hundred dollars punitive damages, alleging a conspiracy between Finnegan and defendant to cheat and defraud him.

The jury found for plaintiff and assessed his actual damages at two hundred dollars and his punitive damages at one hundred dollars. Defendant appealed.

BLAND, P. J., (after stating the facts as above).— 1. Defendant insists that as the petition does not allege that the defendant *falsely, fraudulently* and *knowingly* made the statements, etc., it is wholly insufficient to support a judgment. The petition charges that "the defendant corruptly and fraudulently, with the intent to cheat and defraud the plaintiff," etc. This allegation is sufficient in a pleading to charge fraud in any court.

2. Defendant asked, but the court refused, the following instruction:

"If the jury believe from the evidence that plaintiff loaned one Finnegan $507 and took as collateral security some diamonds, and that plaintiff asked defendant what was the value of said diamonds; and that if you believe from the evidence that the opinion given at said time by defendant was his honest belief as to the actual value of said diamonds, believing same to be true, and that if you believe and find that defendant did not enter into a conspiracy with said Finnegan, and

that defendant had no knowledge of the alleged loan between plaintiff and Finnegan, and was acting in the usual course of business and wholly without reward, then the plaintiff can not recover, and your verdict must be for the defendant.''

There is no evidence in the record to support this instruction. Gill testified that he was aware of the disposition Finnegan was to make of the jewelry, when he pretended to examine it and estimate its value for plaintiff. The jewelry was his, the disposition which was to be made of it was not ''in the usual course of business,'' but was to dispose of it by cheat and fraud and for a sum largely in excess of its value.

3. This is not a case for punitive damages; such damages are not recoverable except in cases where malice, violence or passion and wanton recklessness is shown. Kennedy v. Railroad, 36 Mo. 351; Nelson v. Wallace, 48 Mo. App. 193; Lewis v. Jannoupuolo, 70 Mo. App. 325; Dorsey v. Railway, 83 Mo. App. 528; Yowell v. Vaughn, 85 Mo. App. 206. It is therefore considered that unless the plaintiff will, within ten days from the filing of this opinion, enter a remittitur of $100, the judgment will be reversed and the cause remanded for retrial, but if the remittitur be entered within ten days, it is considered that the judgment shall stand as affirmed for the sum of $200. *Reyburn, J.,* concurs; *Goode, J.,* dissents from paragraph 3.