HARRY C. MORROW v. JOHN E. FRANKLIN, Ap-
pellant.

Division One, July 23, 1921.

1. **FRAUD AND DECEIT:** Scienter: Allegation Tantamount to Knowl-
edge.  *Scienter* means knowledge on the part of the person mak-
ing representations, at the time they are made, that they are
false, and in actions of fraud and deceit it is necessary to allege
and prove the *scienter;* but it is not necessary to expressly al-
lege that the defendant knew his representations upon which the
action is based were false; it is sufficient if the language used is
tantamount to an allegation of knowledge that they were false;
it is sufficient if the petition charges that the representations were
false, were made by defendant himself, and therefore necessarily
known to him, that they were "knowingly" made and done for
"the fraudulent purpose of deceiving the public," and especially
should such allegations be held to be a sufficient plea of the *scienter*
after verdict, where no demurrer to the petition was filed and its
insufficiency was first raised by an objection to the introduction of
testimony.

2. ————: Several False Representations: Proof of One.  Where several
false representations are charged to the defendant, any one of
which is sufficient to constitute an action for fraud and deceit,
substantial proof of any one of them is sufficient to carry the case
to the jury.

3. ———: Sale of Stock: Fictitious Sale of Railroad. Evidence that the president of a trust company sold its stock to plaintiff at $190 per share with the assurance that its book value was $200, at a time when the company was insolvent, the result of happenings through years, carefully concealed by fictitious and imaginary profits and the payment of dividends never earned; that the said president told plaintiff, prior to purchase of the stock, that the company had sold for subsequent delivery a railroad, financed and built by it, at a profit of one million dollars, whereas in fact he had only given an eighteen months' option on the road; and that this railroad was one of the chief factors in the ultimate wreck of the trust company, is sufficient, in an action of fraud and deceit, to submit to the jury the issue whether the sale of the stock to plaintiff was induced by the false representations of its president that the company was in a solvent and prosperous condition and the book value of its stock was worth what he said it was, these facts being sufficiently pleaded.

4. ———: ———: Evidence: Value at Time of Sale: Subsequent History of Corporation. In an action of fraud and deceit based on the fraudulent sale of the stock of a corporation at a false and fictitious value, the value of the stock at the date of the purchase is the value to be considered in determining the damages, but the subsequent history of the corporation and the conditions and rapid fall in the price of its stock thereafter may be shown as throwing light upon the value at the time of the purchase, especially where there was no radical change in the real assets and liabilities of the company during the subsequent months up to the time of its failure, and the defendant had in writing represented to plaintiff that he had "inside knowledge of the company's affairs." And such evidence being proper, it is not error to instruct the jury that the real value at the time of the purchase may be ascertained "in the light of the subsequent events in the history of the company."

5. ———: ———: Presumptive Knowledge of Directors. In an action for fraud and deceit brought against the president of a trust company for fraudulent representations in the sale of its stock, at a price far above par, at a time when it was in fact insolvent and its stock had been given a fictitious book value, it is not erroneous to instruct the jury that "it is the duty of a director of a trust company to ascertain the value of its assets and the amount and extent of its liabilities, and the law presumes that a director is familiar with the surplus and profits and the intrinsic value of its assets and the amount of its liabilities." The statute (Secs. 1131, 1133, R. S. 1909) imposes upon directors of trust companies the duty of knowing their exact status, and the law presumes that they perform that duty. Besides, in this case, such instruction, if

technically erroneous, was harmless, because defendant in a letter to plaintiff, prior to the sale of the stock, said he had "inside knowledge of the affairs of the company."

6. ————: ————: **Trust Company.** It is the duty of directors of a trust company, made so by statute, to know its financial condition, the value of its assets and the extent of its liabilities at the time they offer its stock for sale, or induce others to buy it from other stockholders.

7. ————: ————: **Reliance Upon Statement of Directors: Access to Books.** A stockholder of a trust company, employed in its place of business, with a legal right to examine its books, has a right to rely upon the statements and representations of its officers and directors, and is not bound to examine the books for himself be-·fore purchasing its stock.

8. ————: ————: **Printed Circulars.** Directors of a trust company are liable to a purchaser of its stock for false representations of its financial condition contained in printed pamphlets and circulated with their knowledge for the purpose of inducing people to purchase.

9. ————: ————: **Representations of Fact.** Positive statements concerning the present or past earnings of a corporation, or the value of its stock, or the value and soundness of its assets, or the amount of its liabilities, made by its officers and directors, are not mere expressions of opinion, but representations of fact upon which a prospective purchaser of its stock has a right to rely.

10. ————: ————: **Measure of Damage.** The measure of damages, in an action of fraud and deceit, based on a sale of the stock of a corporation, induced by the false representation of its president as to its value, is the difference between the value it would have had if such representations had been true, and the real value at the time of the purchase. Nor is it error to instruct the jury that such real value may be ascertained "in view of the subsequent events in the history of the company" where the subsequent history of the company is properly admitted in evidence.

11. ————: ————: **Expressions of Opinion: Refusal to Withdraw From Jury.** Statements made by defendant, the president and director of a trust company, sued for fraud and deceit based on false statements as to the value of stock sold to plaintiff, that the company could continue indefinitely to pay a four per cent quarterly dividend, that if plaintiff bought its stock at $190 per share he could sell it in six months at a profit or advanced price, that the stock would by the next January be worth $300 per share, and that the company could be liquidated in twelve months and the sum of $200

per share paid to the stockholders, if they stood alone, would be mere expressions of opinion, but made in connection with representations as to the value of the stock and the condition of the company and its assets and made for the purpose of strengthening those representations and as a part and parcel of them, it was not error for the court to refuse to give instructions withdrawing them from the jury's consideration; and in view of the fact that the court in other instructions told the jury what statements were statements of fact and not mere opinions, and further told them explicitly what representations would authorize a verdict for plaintiff, in which no mention was made of these statements, the refusal to withdraw them even if considered mere expressions of opinion, was at most harmless error.

12. ———: **Action At Law: Weighing Evidence on Appeal.** An action of fraud and deceit, brought by the purchaser of stock of a corporation for damages, based upon the false representations of the defendant as to its value, is an action at law, and if there is substantial evidence to support the verdict of the jury, its weight is not for the consideration of the appellate court, however sharp are the issues of facts presented; but, the case being without error committed in the trial, the judgment approved by the trial court will be affirmed.

13. **INSTRUCTION: Assumption of Fact.** An instruction beginning, "If you find false statements were knowingly made," does not assume as a fact that such statements were made.

Appeal from St. Louis City Circuit Court.—*Hon. Thomas C. Hennings*, Judge.

AFFIRMED.

*John A. Hope* for appellant.

(1) The point that the petition does not state facts sufficient to constitute a cause of action was raised when we objected at the beginning of the trial to the introduction of any evidence; again at the conclusion of plaintiff's evidence, when we requested the court to instruct the jury that under the pleading and the evidence, plaintiff could not recover; and again at the conclusion of all the evidence, when we asked a similar instruction. Even if we had not thus raised the point, it is not waived,

as the learned trial judge seems to have erroneously assumed. Such a defect is incurable; it can be raised for the first time in the appellate court. Sec. 1804, R. S. 1909; Well v. Greene County, 69 Mo. 286; Andrews v. Lynch, 27 Mo. 169; Oakes v. School District, 98 Mo. App. 165; Clothing Co. v. Watson, 168 Mo. 133, 143; Shoe Co. v. Wyble, 261 Mo. 675, 686. Even if the case were here without a Bill of Exceptions, and on the record proper only, it would nevertheless be the duty of this court to pass upon the sufficiency of the petition. Shoe Co. v. Wyble, 261 Mo. 686. (2) The very gist of an action for deceit and fraud is that defendant knew the representations to be false, or that he made them as of his own knowledge when in truth he was conscious of having no knowledge on the subject. This is referred to in the books as the *scienter*. Dulaney v. Rogers, 64 Mo. 203; Bigelow on Fraud, sec. 3, pp. 56-57. (3) And a petition which, like the one in this case, does not aver the *scienter* is fatally defective. Plaintiff, in his petition, bases his right of action upon representations alleged to have been made to him "in February and June, 1913;" but the petition nowhere contains any allegation that defendants knew the alleged representations were false, or that defendants made the representations as to their own knowledge when they were without knowledge respecting the truth or falsity of the representations. It is true the petition does say that the defendants caused statements of the Trust Company's assets and liabilities, printed in pamplet and card form, to be circulated and distributed generally to the public "for the purpose of deceiving people and to induce the purchase of stock," etc.; and further, that, "for the purpose of deceiving him and of inducing him to buy stock," defendants "falsely stated to him that the actual value of the stock as shown by the books was $200 per share." But these allegations are no sufficient averment of the *scienter*. There must be not only an averment that the representations were false, and that they were made for the purpose of deceiving and induc-

ing the purchase, but the petition must go further and aver that defendants knew at the time that the representations were false, or that defendants made the representations as of their own knowledge while conscious at the time they were without knowledge. Anstee v. Ober, 26 Mo. App. 668; Redpath v. Lawrence, 42 Mo. App. 108; Walker v. Martin, 8 Mo. App. 560; Hoester v. Sammelman, 101 Mo. 624; Nichols v. Stevens, 123 Mo. 96, 117; Remmers v. Remmers, 217 Mo. 541, 556; Cantwell v. Harding, 249 Ill. 354; Edwards v. Noel, 88 Mo. App. 439; State ex rel. v. Reynolds, 272 Mo. 558, 593. (4) Upon plaintiff's own testimony, he had no case, and the court erred in not instructing the jury at the close of the case to return a verdict for defendant. Bigelow on Fraud, pp. 29, 30, 11, 12, 14; Franklin v. Holle, 7 Mo. App. 241; McBeth v. Craddock, 28 Mo. App. 380; Dowelrymple v. Craig, 149 Mo. 345; Davis v. Foreman, 229 Mo. 47; Gordon v. Butler, 105 U. S. 558; Coal Co. v. Halderman, 254 Mo. 596. (5) There was no showing of intent that the alleged representations were to be acted on. Bigelow on Fraud, p. 1; Coal Co. v. Halderman, 254 Mo. 596; Peters v. Lohman, 171 Mo. App. 482; 14 Am. & Eng. Ency. Law (2 Ed.), p. 102; Remmers v. Remmers, 217 Mo. 557. Plaintiff was a man of at least ordinary sagacity; he took twenty days' time to investigate and consider; books and papers and assets open before him; and he has no case. Bigelow on Fraud, p. 18; Davis v. Foreman, 229 Mo. 47. Another reason why the foundation of plaintiff's case is so unstable that the verdict should not be permitted to stand, again looking alone to his own testimony, is that his testimony abounds in prevarications. These untruths stand out so boldly in his testimony "that he may run that readeth it." Moore on Facts, sec. 1074, p. 1211. (6) The rule is that the evidence must be confined to the value of the assets at or about the time of the transaction complained of; and this rule is particularly applicable in a case like this, where, on account of general

business conditions over which defendants had on control, values had been constantly declining. This rule, which limits the evidence to values at or about the time of the transaction under investigation, is applicable in all sorts of cases, including deceit and fraud. Furthermore, the alleged representations of which plaintiff complains were made, according to his petition, "soon after" his arrival in St. Louis," which was April, 1913, and in no event after February and June, 1913. 1 Jones on Evidence, p. 853, sec. 168; Markowitz v. Kansas City, 125 Mo. 490; Met. St. Ry. Co. v. Walsh, 197 Mo. 402; Globe Ins. Co. v. C. & A. Railroad, 174 Mo. App. 547; Grant v. Hathaway, 117 Mo. App. 609; Deane v. Houser, 83 Mo. App. 614; Union Natl. Bank v. Hunt, 7 Mo. App. 48; Kerwin v. Friedman, 127 Mo. App. 519; Hewitt v. Price, 204 Mo. 31; State v. Meysenburg, 171 Mo. 34; French v. Fitch, 67 Minn. 495; Addis v. Swofford, 180 S. W. 557. The Westerman-Trader audit should not have been admitted. The purpose of that audit was to ascertain the financial condition of the company on May 11, 1914. It was no evidence of what the assets were in the spring of 1913, nor of their value at the time of the alleged misrepresentations. (7) Instruction 1, given at plaintiff's request, is erroneous, because the jury was thereby told that "the law presumes that a director is familiar with the surplus and profits and the intrinsic value of the assets and the amount of the liabilities of any trust company of which he is a director, and the law presumes in this case that these four defendants were all familiar with the assets and liabilities, the past earnings, surplus and profits of the Bankers Trust Company," and because this instruction said "the law presumes in this case these four defendants were all familiar with the assets, etc." This instruction amounts to a declaration that legal or constructive fraud authorizes a recovery in an action for fraud and deceit, whereas it is an established principal that in such cases legal or constructive fraud will not suffice and that actual

fraud must be proved. Kountze v. Kennedy, 147 N. Y. 124; Bank v. Hutton, 224 Mo. 42, 70; Wakeman v. Daily, 51 N. Y. 29; Peters v. Lowman, 171 Mo. App. 465, 482; Bank v. Byers, 139 Mo. 627, 652; King v. Moon, 42 Mo. 555. The above instruction was also erroneous and misleading because of the use of the term ''the intrinsic value of the assets.'' What does intrinsic value mean? What lawyer even, not to mention the ordinary juror, could give an accurate definition of that term? It should never be used in an instruction; certainly not without a definition of its meaning. Nowhere in the instructions did the court tell the jury what was meant by ''intrinsic value'' as used in the above instruction. Bowles v. Hunter, 91 Mo. App. 337; Prince v. Compress Co., 112 Mo. App. 49, 66; 11 Ency. Pl. & Pr. p. 139; Jeffries v. Southern Co., 88 Va. 869; Faulkner v. Mfg. Co., 79 Ill. App. 544; Rudd v. Robinson, 126 N. Y. 117; Powell v. Conover, 75 Hun. 11; Bell v. James, 128 N. Y. App. 241; 8 Thompson on Corporations, sec. 1301; 1 Bigelow on Fraud, p. 233; 1 Sackett on Instructions, sec. 197, pp. 161-162.

*Judson, Green & Henry* for respondent.

(1) The petition states a cause of action against Franklin. Nauman v. Oberle, 90 Mo. 666; Arthur v. Wheeler & Wilson Co., 12 Mo. App. 335; Adams v. Barber, 157 Mo. App. 370; Hoffman v. Gill, 102 Mo. App. 324; Davis v. Central Land Co., 143 N. W. 1073; 20 Cyc. 99, 100. (2) Plaintiff's testimony made a case for the jury. Thus, the testimony of plaintiff that this appellant told him the railroad of the Trust Company had been sold at a profit of a million dollars would alone take the case to the jury. But wholly aside from any testimony of plaintiff the books of the Bankers Trust Company, and the fictitous entries of profits made therein by its officers and employees, together with the printed statements of assets and liabilities issued by authority

of this appellant made a case for the jury. Bank v. Byers, 139 Mo. 627. (3) . Statements by the president of a bank as to the value of its stock and the soundness of its assets to one who has no knowledge on the subject are actionable statements of fact, and not mere expressions of opinion. 20 Cyc. 18; Snider v. McAtee, 165 Mo. App. 260, 178 S. W. 484; Fall v. Hornbeck, 132 Mo. App. 595; Stonemets v. Head, 248 Mo. 243; Foundry Co. v. Heskett, 125 Mo. 532; Barron Estate Co. v. Woodward, 163 Cal. 561, 125 Pac. 351; Hubbard v. Oliver, 139 N. W. 77; Houston v. Lumber Co., 146 S. W. 1061. (4) The fact that respondent could have examined the books of the bank does not prevent his recovery when he in fact did not examine them, but relied entirely upon Franklin's representations. Cottrill v. Krum, 100 Mo. 397; Brolaski v. Carr, 127 Mo. App. 286; Kerr on Fraud, p. 81; Snider v. McAtee, 178 S. W. 484; Snider v. McAtee, 165 Mo. App. 260. (5) The credibility of the witnesses was solely for the jury. Holzner v. Met. St. Ry. Co., 261 Mo. 379; Fritz & Groh v. Ry. Co., 243 Mo. 62; Turley v. Met. St. Ry. Co., 166 Mo. App. 655; Beckerman v. Jewelry Co., 175 Mo. App. 279; Wallace v. Ins. Co., 174 Mo. App. 110. (6) Evidence as to the subsequent history of the Trust Company and the disposition of its assets was admissible as bearing upon the value of the stock when respondent bought it. Addis v. Swofford, 180 S. W. 548; Hindeman v. Bank, 112 Fed. 936, 57 L. R. A. 108; Peek v. Derry, L. R. 37, Chan. Div. 541. (7) Instructions 1 and 7 given for plaintiff are correct under the evidence in this case. R. S. 1909, secs. 1131, 1132 and 1133; Bank v. Hill, 148 Mo. 380; Lyons v. Corder, 253 Mo. 539; Finn v. Brown, 142 U. S. 56; Houston v. Thornton, 122 N. C. 365, 373; Searle v. Baker, 70 Tex. 289; McCauley v. Brown, 99 Mo. App. 625. (8) The words "instrinsic value" did not require any definition. Addis v. Swofford, 180 S. W. 556; Hindeman v. Bank, 112 Fed. 936. (9) Instruction No. 22 given by plaintiff correctly states the law. Bank v. Byers, 139 Mo. 627; Shin-

abarger v. Shelton, 41 Mo. App. 147; Hindeman v. Bank, 112 Fed. 936; Addis v. Swofford, 180 S. W. 556.  (10) The report of the appraisers selected by Franklin to appraise the property of the Trust Company and the report of the accountants whom he selected to examine its books were admissible in evidence as against Franklin because these men were his agents for this purpose, and their acts and reports in that matter were in law the acts and reports of Franklin himself.

GRAVES, J.—Action for damages based upon alleged fraud and deceit in the sale of certain shares of stock in the Bankers Trust Company by appellant to plaintiff.  As originally brought the suit was against five directors of the said Bankers Trust Company, viz., John E. Franklin (the present sole appellant), Charles S. Marsh, Lester S. Parker, Joseph B. Graham and Stephen B. Hunter.  Before trial the case was dismissed as to Hunter.  Plaintiff had a verdict, in a trial before a jury, for $103,388.88.  This verdict was signed by nine of the twelve jurors.  Motions for new trial were filed, and the court sustained such motions as to defendants Marsh, Parker and Graham, but overruled them as to defendant Franklin.  After the motions of Parker, Graham and Marsh were sustained, plaintiff dismissed as to these three defendants, so that judgment went against Franklin alone, who is now the sole defendant and appellant. We used the term motions for new trial, because there were (1) a joint motion for new trial, and (2) a separate motion for new trial by each of the four defendants. The vital parts of the petition are short, and we reproduce them:

"All of the said defendants were, during the time hereinafter mentioned, large holders of the stock of said corporation, and some of them were also largely interested in a syndicate or joint partnership which owned or controlled a large amount of stock in said corporation, and all of them were desirous of having the

market price of said stock maintained at a high level so that their ability to sell the same at a profit or to borrow money thereon might be maintained and increased.

"Plaintiff further says that for several years prior to April, 1913, the said defendants, as directors of the said Bankers Trust Company, had been accustomed to declare and pay to themselves and other stockholders enormous dividends upon its stock, which have not been earned and the payment of which really impaired its capital stock, in violation of the laws of the State of Missouri, for the fraudulent purpose of deceiving the public as to its earnings and in order to inflate the market value thereof; and had also from time to time been accustomed to place or to cause or permit to be placed false and fictitious values upon the assets owned. and controlled by said corporation, and knowingly to cause or permit false and fictitious entries on its books of earnings or profits by said corporation, thereby giving to the said stock which they owned, and some of which they had for sale, a highly inflated and fictitious value, and thereby unlawfully paying to themselves large sums in unearned dividends thereon.

"Plaintiff further says that in February and June, 1913, these defendants, for the purpose of deceiving people and to induce the purchase of stock owned by them at fictitious prices, fraudulently caused false statements of audits of the books of the Bankers Trust Company, showing its assets and liabilities, to be printed in pamplet and card form and circulated and distributed generally to the public in the City of St. Louis and elsewhere, which said pretended statements of the assets and liabilities of the said company were false at the time they were issued, in that they largely overstated the amount and value of its assets and understated the amount of its liabilities.

"Plaintiff further says that prior to April, 1913, he was a resident of Whitehall, Illinois, and was engaged in business at that place; that the defendants herein at that time induced him to come to St. Louis by making a contract with him, by the terms of which he was to take charge of one of the departments of the Bankers Trust Company which handled the promotion of new corporations, and was to become vice-president of the said company, but not a director; but plaintiff says that the real purpose of these defendants in inducing him to come to St. Louis and become connected with the Bankers Trust Company, as aforesaid, was not to have charge of said department under said contract, or any other department, but it was to induce him to purchase from them, and from others, stock of the said Bankers Trust Company at highly inflated and fictitious prices.

"Plaintiff further says that soon after his arrival in St. Louis these defendants, for the purpose of deceiving him and of inducing him to buy stock of the Bankers Trust Company from them and others at a highly inflated and fictitious price, stated and represented to him that if he wished to hold the office of vice-president he should own and hold a large amount of stock in the Bankers Trust Company, and falsely stated to him that the actual value of the stock, as shown by the books, was two hundred dollars per share, and that the company could be liquidated in twelve months and the sum of $200 a share paid to the stockholders; whereas, in truth and in fact, the said company was then insolvent, and its liabilities exceeded the value of all its assets. They also falsely stated to him that the dividends of twenty per cent per annum theretofore paid on said stock had all been earned and paid out of profits, and that said company was then earning much more than twenty per cent per annum on its stock, whereas, in truth and in fact, said dividends had been paid in whole or in large part out of capital, and the capital of the said company had then been impaired and dissipated and lost through

the payment of said unearned dividends.  They also falsely stated to him that a large part of the capital of the company was invested in the San Antonio, Uvalde & Gulf Railroad, which had been built by said Bankers Trust Company, and for the building of which there had been actually paid to the Bankers Trust Company cash bonus amounting to more than one million dollars which amount was a clear profit to said Bankers Trust Company, and that said railroad had been sold for January 1, 1914, delivery, at a clear profit to the company of $1,000,000, and that it was then upon dividend paying basis and was being operated at a profit; whereas, in truth and in fact, the Bankers Trust Company never received any cash bonus of any kind, nor any other money or property as a bonus for the building of said railroad, and said railroad was then being operated at a large loss, with no prospects of its becoming self-sustaining in the future, and had not then been sold at a profit of $1,000,000 or at all.  They also falsely stated that the market value of the bank's stock then owned by the Bankers Trust Company and the market value of the said railroad owned by it was largely in excess of the value at which they were carried on the books of the said company, whereas, in truth and in fact, the market value thereof was then a great deal less than the value at which they were so carried on the books of the Bankers Trust Company.  The defendants also exhibited to the plaintiff the false printed statements of assets and liabilities hereinabove referred to in order to induce him to purchase said stock.  Plaintiff says he had no knowledge respecting the said various false statements and representations so made to him by these defendants and the said Bankers Trust Company, except such as he derived from them, and that he trusted implicitly the said statements of these defendants, and in reliance thereon, at their urging, he purchased, in May, 1914, from J. E. Franklin, five-hundred shares of the stock of said corporation at the price of $195 per share, paying therefor

289 Mo.—36

$17,000 in cash and giving his negotiable notes for the balance of $77,500, all of which notes were thereupon immediately negotiated and sold by the said Franklin to innocent purchasers for value. That, relying upon said false representations, and at the suggestion of these defendants, he also purchased, in April, 1914, forty-five shares of said stock from other parties at $195 per share, paying therefor in cash and notes. Thereafter he collected dividends upon said stock amounting to $6,000.

"Plaintiff further says that in May, 1914, the said Bankers Trust Company ceased paying dividends, and thereafter a receiver was appointed therefor; whereupon he discovered for the first time the falsity of the aforesaid statements so made to him and that the Bankers Trust Company was in fact insolvent when he bought said stock, and that its stock was in fact absolutely worthless, and had been in fact worthless since the beginning of the year 1913."

Each defendant filed a separate answer, in the nature of a general denial:

The several questions and the pertinent facts therewith connected can best be taken up in the course of the opinion. The errors urged are (1) admitting improper evidence, (2) the giving of improper instructions, (3) refusing to sustain a demurrer to the evidence, and (4) failure of the petition to state a cause of action. Of these in inverse order.

I. Does this petition state a cause of action? This is the first question urged by appellant. No demurrer was filed to the petition, and the point was first raised by an objection to the introduction of evidence under the petition. The appellant says that there is the fatal absence of an allegation of *scienter*. Learned counsel for appellant thus speaks:

Scienter: Sufficient Pleading.

. "But the petition nowhere contains any allegation that defendant knew the alleged representations were

false, or that defendants made the representations as to their own knowledge when they were without knowledge respecting the truth or falsity of the representations.''

We have quoted practically all of the petition. It is true that the petition does not in words aver that defendant *knew* the representations to be false, nor does it allege that the representations were made as if of defendant's knowledge, when in fact he had no knowledge. In actions for fraud and deceit the term *"scienter"* has thus been defined in 12 R. C. L. p. 328: *"Scienter* means knowledge on the part of the person making the representations, at the time when they are made, that they are false, and it is generally held that in an action of deceit *scienter* must be proved.''

As a rule that which must be proved, must be pleaded. If *scienter* is a material element in actions for fraud and deceit, then it should be pleaded as well as proven. Thus in 12 R. C. L. p. 420, it is said: ''Fraudulent intent must be alleged in all cases where it is a material ingredient of the fraud relied on. In an action of deceit it is proper to allege facts showing knowledge on the part of the defendant that his representations were false, and generally in such an action *scienter* must be alleged, either expressly or by alleging facts which are tantamount thereto.''

It is very generally held that in the legal action of fraud and deceit *scienter* is a material element. In this State we adhere to the doctrine that *scienter* is an element necessary to be pleaded and proven in legal actions for fraud and deceit.

In speaking of such actions in the case of Remmers v. Remmers, 217 Mo. l. c. 557, we said: ''It is essential to state a cause of action of that character to aver that such representations were false and so known to be by the defendant, and that such representations were made with the intention of deceiving plaintiff, and that plaintiff was deceived thereby, and relying upon such promises and representations he was induced to act to his injury.''

But whilst this is true, it does not necessarily follow that the pleader must use the words "that defendant knew such representations to be false." It is sufficient if the language of the petition is "tantamount thereto." Especially is this true of a petition which is attacked after verdict, as in the instant case.

To like effect is the rule announced in 20 Cyc. 99, whereat it is said: "Except in those jurisdictions where a *scienter* is not an essential element of actionable fraud, it is necessary that a *scienter* be alleged. It is not always necessary, however, that knowledge of the falsity of the representations be alleged in so many words. Thus allegations that the representations were fraudulently or deceitfully made sufficiently aver a *scienter,* as the word 'fraudulently' or 'deceitfully' excludes the idea of mistake and imports that the representations were made with knowledge of their falsity."

Our own courts have taken the same view, and adopted the rules, supra, as announced in R. C. L. and Cyc. Thus in Arthur v. Wheeler & Wilson Co., 12 Mo. App. l. c. 339, the court said: "Defendant objected to all evidence under the second count, because the petition states no cause of action, inasmuch as it does not allege that the representations made by defendant were known by it, at the time, to be false. As plaintiff in his petition alleged not only that the statement made by defendant was false, but, also, that it was fraudulently made, we think that the *scienter* was sufficiently alleged to support the action for deceit, and that the objection to evidence on this ground was properly overruled."

In Hoffman v. Gill, 102 Mo. App. l. c. 324, the court says: "Defendant insists that as the petition does not allege that the defendant falsely, fraudulently and knowingly made the statements, etc., it is wholly insufficient to support a judgment. The petition charges that 'the defendant corruptly and fraudulently, with the intent to cheat and defraud the plaintiff' etc. This allegation is sufficient in a pleading to charge fraud in any court."

The question is more elaborately dealt with by Nixon, P. J., in Adams v. Barber, 157 Mo. App. 1. c. 385, in this language:

"Appellant assigns as error that the allegations of the petition are insufficient to sustain a judgment for deceit, and that his demurrer to the petition on that account should have been sustained. The petition, after alleging the specific false representations, enumerates them in detail at great length and then proceeds to charge what is commonly called the *scienter,* in these words: 'Plaintiff further says that said representations so made by defendant were made to the plaintiff fraudulently and intentionally for the purpose of inducing plaintiff to enter into said contract and to make said exchange of his stock of merchandise and fixtures to defendant for said land.'

"The objections appellant makes to this petition are, that plaintiff must allege and prove that the representations upon which his action is based were false; that they were known to be false by the defendant at the time they were made; or that the representations were made by defendant as of his own knowledge when in part he had neither any knowledge on the subject nor any reasonable grounds, to believe the representations to be true; and that the plaintiff's petition does not come up to these requirements. It will be seen that the specific statements of the petition are 'that the defendant fraudulently and intentionally for the purpose of inducing plaintiff to enter into said contract' made said representations. It must be remembered in the discussion of the sufficiency of these allegations to sustain an action for deceit, that this is not an action in equity to rescind a contract procured by fraudulent representations, but an action at law for damages caused by deceit and that under the law a *scienter* is an essential element of actionable fraud. It will be seen by a perusal of the petition that it first sets out the representations made by the defendant and follows this with the allegation that the

plaintiff entered into the contract relying upon the representations of the defendant, and then sets out the inducements and statements made by the defendant to induce the plaintiff not to go to Arkansas and examine the land before making the trade. The words used are that plaintiff 'fraudulently and intentionally for the purpose of inducing plaintiff to enter into said contract' made said representations. The word 'fraudulent' is defined by Webster as follows: 'Using fraud; trickery; deceit. Dishonest. Synonym: Deceitful, fraudful, guileful, crafty; treacherous; dishonest, etc.,' and while the authorities hold with great uniformity that in action of this kind it is necessary to charge the *scienter,* no express form of words is required to be used for that purpose, nor is it always necessary that the knowledge of the falsity of the representations be expressly stated in so many words. And it has been held that the allegation that the representations were fraudulently or deceitfully made sufficiently avers the *scienter,* as the word 'fraudulently' or the word 'deceitfully' excludes the idea of mistake and imports that the representations were made with knowledge of their falsity. The allegation of an intention to deceive is not always to be made in direct terms. And whilst the plaintiff must, in substance, aver that the representations were made with knowledge of their falsity, this requirement is complied with if from the averments of the petition it can be fairly gathered that the defendant falsely and fraudulently deceived the plaintiff. Especially is this considered sufficient after verdict. [Barber v. Morgan, 51 Barb. (N. Y.) 116; Zabriskie v. Smith, 13 N. Y. 322; Bayard v. Malcolm, 2 Johns. (N. Y.) 550.] In the case of Nauman v. Oberle, 90 Mo. 666, the charge was held sufficient that 'the defendant falsely, fraudulently, and deceitfully represented and guaranteed.' [See, also, Hoffman v. Gill, 102 Mo. App. 320, 324, 77 S. W. 146; Fenwick v. Bowling, 50 Mo. App. l. c. 521; Carr v. Sanger, 138 App. Div. 32.] Under the authorities cited, the

charge of the *scienter* in this petition was undoubtedly sufficient, as the allegations charge that the representations were fraudulently made, which implies that they were knowingly made by the defendant in bad faith with knowledge of their falsity.

"Nor does this conclusion conflict with the statement of the law by our Supreme Court in the case of Remmers v. Remmers, 217 Mo. l. c. 557, 117 S. W. 1117, that in order to state a cause of action for deceit it is essential to aver that such representations were false and so known to be by the defendant, and that such representations were made with the intention of deceiving plaintiff, and that plaintiff was deceived thereby, and relying upon such promises and representations he was induced to act to his injury. This opinion could not be reasonably construed to mean that the necessary allegations cannot be substantially stated without the use of formal statement, nor that any particular set phrase or formal words are necessary in order to substantially make the charge. The opinion in that case turned on the elements necessary to be stated rather than the sufficiency of their statement. We conclude that the petition is sufficient to withstand the assault after issues joined and especially after verdict."

Defendant relies particularly upon the Remmers case, so clearly explained by the Springfield Court of Appeals, in the quotation, supra.

So that the only question is to measure this petition by these rules as to sufficiency of pleadings in deceit cases, and determine the matter as to whether or not the language used is tantamount to an express allegation of *scienter*. We think it is. The following paragraphs in the petition amount to a charge of knowledge of the falsity of the alleged statements to plaintiff:

"Plaintiff further says that for several years prior to April, 1913, the said defendants, as directors of the said Bankers Trust Company, had been accustomed to declare and pay to themselves and other stockholders

enormous dividends upon its stock which had been earned and the payment of which really impaired its capital stock in violation of the laws of the State of Missouri, for the fraudulent purpose of deceiving the public as to its earnings and in order to inflate the market value thereof; and had also from time to time been accustomed to place or to cause or permit to be placed false and fictitious values upon the assets owned and controlled by said corporation, and knowingly to cause or permit false and fictitious entries on its books of earnings or profits by said corporation, thereby giving to the said stock which they owned, and some of which they had for sale, a highly inflated and fictitious value, and thereby unlawfully paying to themselves large sums in unearned dividends thereon.

"Plaintiff further says that in February and June, 1913, these defendants, for the purpose of deceiving people and to induce the purchase of stock owned by them, at fictitious prices, fraudulently caused false statements of audits of the books of the Bankers Trust Company, showing its assets and liabilities, to be printed in pamphlet and card form and circulated and distributed generally to the public in the City of St. Louis and elsewhere, which said pretended statements of the assets and liabilities of the said company were false at the time they were issued, in that they largely overstated the amount and value of its assets and understated the amount of the liabilities."

These preliminary charges in the petition suffice to aver knowledge. The things here charged are things charged to have been done by the defendant himself, and therefore of necessity of his knowledge. The dividends are charged to have been paid for "the fraudulent purpose of deceiving the public." The false and fictitious entries as to profits are charged to have been "knowingly" done or made. As to false statements of assets and liabilities, it is said they were "fraudulently" made. These statements when taken with the other portions of the petition, make it good after verdict to say the least.

II.  The next vital contention is that this case should never have been submitted to a jury.  In other words, that defendant Franklin's demurrer to the evidence should have been sustained.  It will not be necessary to review all of the evidence in this voluminous trial record to pass upon this question.  As will be noted by an examination of the petition there is more than one false representation charged to Franklin, and if there was substantial evidence upon either the matter was for the jury.

Demurrer to Evidence.

A bit of history is apropos here.  In April of 1913, Marsh invited plaintiff, a country banker and business man of Illinois, to come to see them.  When he arrived he was turned over to Franklin, and from thence forward the basis of this lawsuit developed.  According to a letter written by Franklin to a third party the plaintiff was worth about $100,000.  With the alluring offer of making him a vice-president at a salary of $12,000 per annum, he was induced to accept a position in a department "to take charge of such underwriting financing, syndicating and other work of this nature that our board of directors may deem it prudent for you to engage in."

He was informed by Franklin that a syndicate formed was to take over stock of the Bankers Trust Company, known as the Tally stock, and he (plaintiff) would be taken in on the ground floor in that coterie of financiers.  This was preliminary.  He was taken in on that deal.  Plaintiff had hardly gotten his desk warm in his new department, when Franklin began to hold out further and greater things before his eyes.  He was informed that he was wanted for a director when they elected again, and to that end should have stock.  Franklin offered to let him have five-hundred shares of his stock at $190 assuring him that it could be arranged for him to pay a portion and the other could be carried.  This was persistently urged

upon plaintiff from time to time, and it was during these times that the false representations were made to him. The representations ran from the time that plaintiff first talked to Franklin in April, 1913, to the time the stock was finally purchased by plaintiff, upon payment of $17,500 in cash, and balance in notes. The stock was sold to him at $190, with the assurance that the book value was more than $200. In about a year the Bankers Trust Company was in the hands of a receiver, and found to be one of the great financial wrecks of the country. Nor was its ultimate condition the result of happenings during this year, but on the contrary was the growth of years, carefully concealed by purely fictitious and imaginary profits, and by the payment of dividends not in fact earned. But these are just side-lights.

Franklin was the dominating spirit, and Parker and others were rightfully dismissed by the trial court upon the record made.

Going to the question of whether or not this case should have gone to the jury, one instance is sufficient. Plaintiff swears that Franklin represented to him that the San Antonio, Uvalde & Gulf Railroad, a road in Texas, financed and built by the Bankers Trust Company, had been sold "for January 1, 1914, delivery at a profit of $1,000,000 more than it was carried for on the books of the Trust Company." Franklin denied that he made the statement, but this made it a question for the jury. This statement was a very vital matter, because in April, 1913, this railroad was a millstone around the neck of the Trust Company, and was one of the chief factors in its ultimate downfall, although there were many other factors not necessary to discuss.

If Franklin made that statement as to the sale of this railroad it was false and knowingly false. He had given an eighteen month's option on the road, but this was far from a sale. This matter alone would carry the case to the jury, and we need not burden this opinion as to other matters. All these disputed matters were for the jury

There was no error in overruling the demurrer to the evidence.

III.   The next matter urged is alleged error in the admission of evidence.   The trial court permitted evidence of conditions found in the year 1914, which was some months after the sale of stock to the Subsequent plaintiff.   It is urged that the value of the Value. stock at the date of the purchase is the value to be considered in determining the damages in deceit cases. This is true, but it does not follow from this that the subsequent history of the corporation may not throw some light upon the value at the time of purchase, and it is upon this theory that such evidence is competent. Within one year after plaintiff purchased the stock, the corporation passed one of its usual dividends in May, 1914.   The next day after the passing of this dividend the stock dropped from $190 to $110, the second day after to $85, and within three months it was selling for $3 per share.   True, defendant's evidence tends to explain this situation, but it was a jury question.

The evidence of the happenings from May 28, 1913, the date of plaintiff's purchase, to the final decease of the corporation sheds much light upon the question of the real value of the stock at the date of the purchase. Especially is this true in the light of the further facts, that there were no radical changes in the real assets and real liabilities of the corporation, during this time, and as said by Franklin in a letter to plaintiff, of date of January 2, 1914, he, Franklin had "inside knowledge of the company's affairs."   Some of this subsequent evidence consisted of audits made by parties under the authority and direction of Franklin.   In our judgment this evidence was competent as tending to show the value of this stock at the date of the sale.   During all this time Franklin and Marsh were unloading their stock, all no doubt occasioned by their inside knowledge.   Noth-

ing of this kind appears as to other defendants. We rule this evidence was competent.· [Addis v. Swofford, 180 S. W. (Mo.) 548; Hindman v. Bank, 112 Fed. 936; Peek v. Derry, 37 Chan. Div. 541.]

IV. Instruction number one for the plaintiff is sharply criticized. The criticism is thus expressed:

"Instruction 1, given at plaintiff's request, is erroneous, because the jury were thereby told that 'the law presumes that a director is familiar with the surplus and profits and the intrinsic value of the assets and the amount of the liabilities of any trust company of which he is a director, and the law presumes in this case that these four defendants were all familiar with the assets and liabilities, the past earnings, surplus and profits of the Bankers Trust Company,' and because this instruction said 'the law presumes in this case these four defendants were all familiar with the assets,' etc.

*Presumptive Knowledge.*

"This instruction amounts to a declaration that legal or constructive fraud authorizes a recovery in an action for fraud and deceit, where it is an established principle that in such cases legal or constructive fraud will not suffice and that actual fraud must be proved." ·

Said instruction reads:

"The court instructs you that it is the duty of a director in a trust company to ascertain the value of its assets and the amount and extent of its liabilities; and the law presumes that a director is familiar with the surplus and profits and the intrinsic value of the assets and the amount of the liabilities of any trust company of which he is a director, and the law presumes in this case that these four defendants were all familiar with the assets and liabilities, the past earnings, surplus and profits of the Bankers Trust Company."

There is no error in this instruction. The statutes of this State (Sections 1131 and 1133, R. S. 1909) fix the duties of the directors of trust companies in this

State.   The performance of those duties so prescribed by these statutes, forces the directors to know the exact *status* of their company.   The law presumes that such directors performed their duties, and would likewise presume that they possessed the knowledge which would come to them from the performance of such duties, and in this case Franklin, the president and one of the directors, says he was on the "inside" and did know. Construing Section 1099, Revised Statutes 1909, of the Banking Law, which is similar to Section 1131, supra, of the Trust Company Act, this court said it was the duty of the directors to know the express provisions of the statutes defining their duties and powers.   [Lyons v. Corder, 253 Mo. l. c. 558, et seq.]

And in Bank v. Hill, 148 Mo. l. c. 389, it is said: "The board of directors of a bank have a general superintendence over and the management of all its business affairs and transactions which ordinarily vest with it; and it has been said that 'they are bound to know all that is done, beyond the merest matter of daily routine; and that they are bound to know the system and rule arranged for its doing.'   [Morse on Banks and Banking (3 Ed.) sec. 116.]   And what they ought to know as to the general course of the bank's business, they will be presumed to have known, in a contest between the bank and third persons dealing in good faith with it."

But even if this is not the rule, the defendant in this case says he was on the "inside" and did know, and the instruction would be harmless, with this admission of knowledge.

Complaint is also made as to the use of the phrase "intrinsic value of the assets."   This clause counsel says should not have been used without being defined to the jury.  The words "intrinsic" and "value" are both plain English words of ordinary use.   Certainly a jury would not be befogged by the use of the word "value" nor do we think that condition would arise by the addition of the qualifying term "intrinsic."

V. Complaint is also made of the instructions, 7, 8, 9, 10, 11 and 22, given for the plaintiff. These are as follows:

"7. The court instructs you that in determining whether the defendants, or any of them, knew the real value of the stock of the Bankers Trust Company in 1913, you may consider the fact that they were then and had for some time prior thereto been members of its board of directors, and as such had full opportunity to learn its financial condition and the value of its assets, and the extent of its liabilities; and that as directors of the Trust Company it was the duty of each and everyone of the defendants to examine its books and to learn its financial condition and the value of its assets, and the amount of its liabilities.

*Duty of Directors.*

"8. The court instructs you that even though plaintiff was in the office of the Bankers Trust Company and was a stockholder before he purchased the last 45 shares of stock, and as such stockholder he had the legal right to examine the books and accounts of the Bankers Trust Company for himself, yet he had a right to rely upon the statements and representations made to him by the officers and directors of the Bankers Trust Company on or prior to June 1, 1913, if you find that any were so made, without examination, and he was not bound to examine the books for himself before purchasing said stock.

*Purchase by Stockholder.*

"9. The court instructs you that if you find from the evidence that printed statements of the financial condition of the Bankers Trust Company were issued and circulated in pamphlet or card form with the knowledge and consent of the board of directors for the purpose of thereby inducing people to purchase stock in said Trust Company, then the directors are liable for false representations, if any, contained in such printed statements to the same extent that they would be if the statements therein contained had been made by them directly to such purchaser.

*Printed Circulars.*

"10. The court instructs you that if you find that false statements were knowingly made to plaintiff by defendants, or any one of them, for the purpose of inducing him to purchase stock of the Bankers Trust Company, it is not necessary for you to find that such false statements of any one of the defendants was the cause of plaintiff's purchasing stock in order to enable you to return a verdict against defendant, but it is sufficient to render a defendant liable that such false statements were one of the causes which substantially contributed to induce plaintiff to purchase stock.

*Assumption of Fact.*

"11. The court instructs you that positive statements in reference to the past or present earnings of a corporation, by its directors, or officers, or statements as to the value or soundness of its assets, or the amount of its liabilities, or the present value of the stock, or as to the sale of any of its assets, are all statements of fact upon which a prospective purchaser has a right to rely and they are not mere expressions of opinion.

*Representation of Fact.*

"22. The court instructs the jury that the measure of damages recoverable in an action for deceit in inducing the purchase of shares of stock in a corporation, is the difference between the value it would have had if defendant's representations about it had been true and the real value of said shares at the time of their purchase, and the jury may ascertain such value in the light of the subsequent events in the history of the company; and all the facts in evidence relating to the assets, the history and condition of the company may be considered by you on the question of damages for the purpose of determining the actual value of the stock at the time of the purchase; and if you find a verdict in favor of plaintiff you should allow him as damages an amount equal to the difference between the actual value of the stock at the time of purchase, and the value the stock purchased in reliance on the false representations,

*Damages.*

if any, of defendants, would have had at that time of the false representations, if any, made to plaintiff by defendants on or prior to June 1, 1913, representing the said stock had been true, less the $6,000 of dividends .. plaintiff has received on said stock, and you should then add interest on the remainder, if any, from the date of purchase to the present time; and this total will be your verdict.''

We see no error in Instructions 7, 8, 9, 10, and 11, supra. They declare sound law in deceit cases. Counsel rely upon Bank v. Hutton, 224 Mo. 1. c. 70 et seq., but they overlook the fact that the corporation there in question was not a bank or trust company, and that the statutes governing these two classes of corporations make it the duty of the directors to know the condition of their corporation. And in addition Franklin says in his letter that he was on the inside and did know. The foregoing applies to Instruction 7.

As to Instruction 8 it is urged that inasmuch as plaintiff was a stockholder, and a man of experience, when he bought the last 45 shares, he had the right to look at the books, and should not have relied upon the statements of the directors whose duty it was to know the condition of his corporation. The evidence shows that plaintiff had confidence in Franklin, and this Instruction 8 was not error.

So, too, Instruction 9 is a fair statement of the law. The objection is that some of these circular statements were after June 1, 1913, and therefore after the purchase of the first 500 shares of stock. However, they were before the purchase of the last 45 shares, and the instruction was proper.

The objection to Instruction 10 is that it ''assumes defendants made false statements and assumes that plaintiff was thereby induced to purchase.'' The face of the instruction dispels the idea of ''assumption.'' In the very first line, it says ''if you find,'' which left the matter to the jury. The objection to Instruction 11 is just as frivolous.

VI.  Instruction number 22 is, as will be seen, the instruction on the measure of damages.  No complaint is made that the instruction states the wrong measure of damages.  The instruction states the correct measure of damages.  Counsel urge that the instruction assumes that defendants made representations and that they were false.  This objection is not tenable from a glance at the instruction.

*Damages.*

Next it is urged that it is erroneous in that the jury are allowed to ascertain the value of the stock "in the light of subsequent events in the history of the company." We have ruled in a previous paragraph that evidence of this character was admissible as tending to show the value of the stock at the date of purchase, and if the evidence was proper, the court was not in error in telling the jury that it could be considered in determining value. The other two objections to this instruction are just as meritless.

VII.  Lastly it is urged that there was error in refusing to give Instructions E and F for defendant, which read:

"E.  You are further instructed that you must disregard the testimony given by plaintiff, Morrow, to the effect that defendants told him that the Bankers Trust Company could continue indefinitely to pay a four per cent quarterly dividend, that if plaintiff bought stock in the company he could sell it in six months time at a profit or advance price, that the stock was going to increase in value, that the stock would be worth $300 per share by January, 1914, and other statements in his testimony as to the future value of the stock or future earnings of the company.  Such assurances, even if they were given, do not in law give plaintiff any right to recover in this case, both because they are not alleged in plaintiff's petition and because they were mere opinions or predications as to what would occur in the future; and you are, therefore, instructed not to give the testimony above referred to any consideration in arriving at your verdict.

*Opinions: Refusal to Withdraw.*

"F. Plaintiff alleges in his petition that defendants stated and represented to him that the Bankers Trust Company could be liquidated in twelve months and the sum of $200 a share paid to the stockholders. Such a statement or representation, even if made, was a mere matter of opinion, and is no ground in law for a suit for damages; and you must, therefore, give no consideration to the testimony which the plaintiff, Morrow, gave in support of the above allegation."

The refusal of these instructions was not error. All such statements were made in connection with the representations as to the value of the stock, and the condition of the company, and its assets, and were made to bolster up the representations as to value and conditions, and were a part and parcel of the representations as to value and conditions. They were parts of the conversations, and whilst if they stood alone they might be mere expressions of opinions, and would not be actionable, but in the connection in which they were used, it was not error to refuse to withdraw them. Especially is this true in view of the fact that the court had previously told the jury what statements were statements of fact and not expressions of opinions. *Vide* instruction eleven, supra.

But in addition to this the court had explicitly told the jury in Instruction No. 6 just what representations would authorize a recovery, and no mention was made of these opinions as to what would happen in the future. To say the most the refusal of these two instructions was mere harmless error.

The record, as between plaintiff and the defendant Franklin, presents sharp issues of fact. This was not true as to the defendants dismissed from the case. The findings of the jury upon these disputed issues of fact, are binding here. This is a law case, and the findings of the jury bind, if supported by substantial evidence. The weight of the evidence is not a matter for consideration here. The trial courts alone weigh the evidence for the determination of its

Weight of Evidence.

weight.  Such is the province of trial courts, but not of this court.  If the trial court permits the findings of a jury to stand, this court only examines the record to see whether or not there is substantial evidence in support of the findings.  In this case the trial court performed the duty placed by the law upon it.  Such court weighed the evidence, and found that there was no sufficient evidence to sustain the findings as against Parker and other defendants, but that the findings of the jury were sustained by the evidence as to defendant Franklin.  Our review of the evidence convinces us that there is substantial evidence to sustain the verdict as against Franklin, and this is as far as this court can go.  We will not array the evidence upon one side as against the evidence upon the other, and determine which preponderates.  We have no such duty in a law case.  The judgment is affirmed.  All concur, except *Elder, J.*, not sitting.